Case: 1:03-cv-03904 Document #: 535 Filed: 02/13/13 Page 1 of 36 PageID #:7560
Case 1:16-cv-08040 Document #: 5-1 Filed: 12/06/13 Page 1 of 36 PageID #:565
FTC Attachments A-D    Page 1 of 20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | No.  03 C 3904 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| KEVIN TRUDEAU, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On June 2, 2010, this court ordered defendant Kevin Trudeau to pay a sanction of $37,616,161 to the Federal Trade Commission ("FTC") as a result of Trudeau's contemptuous willful failure to comply with this court's September 2004 Consent Order that settled a prior finding of contempt.  See FTC v. Trudeau, 708 F. Supp.2d 711 (N.D. Ill. 2010).  Because Trudeau has not paid that sanction, the FTC has moved (Doc. 481) for an order holding Trudeau in contempt yet again, incarcerating him, and ordering him to provide an accounting and turnover of his assets.[1]  For the reasons set forth below and as stated on the record, that motion is continued.

The initial burden in a civil contempt proceeding rests with the complainant to demonstrate by clear and convincing evidence that the alleged contemnor has knowingly violated the court's order.  SEC v. Custable, 1999 WL 92260, *2 (N.D. Ill. 1999) (citing CFTC v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992)).  Once the complainant makes this prima facie showing, the burden of production shifts to the alleged

---

[1]According to the FTC, as of July 13, 2012, the date of its motion, Trudeau had failed "to pay even one penny" of the sanction.  Apparently, he has since made some minimal payments, but, at least in the FTC's view, nothing that would demonstrate a good faith effort to comply with the court's order.

**FTC Attachment A**

contemnor, who may defend the violation by establishing an inability to comply. Id.; U.S. v. Rylander, 460 U.S. 752, 757 (1983). This requires more than a self serving assertion of inability. Custable, 1999 WL 92260 at *2. "In the case of a failure to pay a court-ordered monetary penalty, the defendant must produce evidence of poverty or insolvency that prevent[s] compliance." Id. (Citing Huber v. Marine Midland Bank, 51 F.3d 5,10 (2d Cir. 1995)). The evidence must show categorically and in detail why the alleged contemnor was unable to comply with the court's previous order. Id.

Defendant must also establish that, acting in good faith, he has made all reasonable efforts to comply. This all-reasonable-efforts standard is construed strictly, and even a showing of diligent and substantial efforts, without a showing of all reasonable efforts, is insufficient to rebut a prima facie showing of contempt. Id. at *3.

In the instant case, the court ordered Trudeau "to pay forthwith to plaintiff the sum of $37,616,161 . . . ." Forthwith has come and gone without any significant payment by Trudeau. Thus, there is no question that the FTC has met its initial burden, establishing a prima facie showing of contempt. Trudeau maintains that he does not have the financial ability to pay this rather substantial sanction, but the evidence he has submitted to date falls woefully short of demonstrating that, or that he has made all reasonable efforts to comply. His failure to make any payments prior to the filing of the instant motion by the FTC demonstrates a lack of good faith. Therefore, as an initial matter, the court orders Trudeau to file (under seal until further order) a complete sworn statement of financial condition using the FTC's form (see FTC Exhibit 4, Attachment C, filed July 13, 2012) on or before January 25, 2013, and to appear at a hearing on a date to be set by the court.

**FTC Attachment A**

Case 1:16-cv-08040 Document #5/135 Filed: 12/06/13 Page 3 of 36 PageID #:768
Case 3:16-cv-08040-D Document 45-1 Filed 12/06/13 Page 3 of 36 PageID #:768 Exhibit
FTC Attachments A-D    Page 3 of 20

## CONCLUSION

For the reasons discussed above and on the record, the FTC's motion to hold Trudeau in contempt (Doc. 481) is continued until further order of the court. Trudeau is ordered to file a sworn complete statement of his financial condition by January 25, 2013. This matter is set for a report on status on February 1, 2013, at 9:00 a.m., at which time the court will set a hearing date.

**ENTER:**     December 6, 2012

_____
**Robert W. Gettleman**
**United States District Judge**

**FTC Attachment A**

Case: 1:16-cv-03904 Document #: 51-1 Filed: 03/06/13 Page 1 of 36 PageID #:526
Case 1:10-cv-03904 Document #: 51-1 Filed: 03/06/13 Page 1 of 36 PageID #:526
FTC Attachments A-D    Page 4 of 20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | No.  03 C 3904 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| KEVIN TRUDEAU, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On June 2, 2010, this court ordered Kevin Trudeau to pay a sanction of $37,616,161 to the Federal Trade Commission ("FTC") as a result of Trudeau's contemptuous failure to comply with this court's September 2004 Consent Order that settled a prior finding of contempt.  See FTC v. Trudeau, 708 F. Supp.2d 711 (N.D. Ill. 2010).  That order has been affirmed by the court of appeals.  FTC v. Trudeau, 662 F.3d 947 (7th Cir. 2011).  Trudeau has failed to comply with ignored the order, much like he has treated all of this court's orders, leading the FTC to move to hold him in contempt yet again (Doc. 481).

Because Trudeau had paid nothing toward the sanction, on December 6, 2012, this court held (Doc. 535) that the FTC has carried its initial burden to establish by clear and convincing evidence that Trudeau has violated the court's order, shifting the burden to Trudeau to produce evidence of poverty or insolvency that prevents compliance.  SEC v. Custable, 1999 WL 92260 at *2 (N.D. Ill. 1999) (citing Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995).  Such evidence must show categorically and in detail why the alleged contemnor was unable to comply with the court's previous order.  Id.  Self-serving statements of financial hardship or indigence, absent corroboration by third parties or financial records including tax returns, bank statements and cancelled checks, do not satisfy this burden of production.  Id.

**FTC Attachment B**

To carry his burden, and on order of the court, Trudeau has filed a "Sworn Financial Statement" with supporting documents that suggests that he lacks the ability to pay anything toward the $37 million sanction. The FTC has rightfully challenged the bona fides of Trudeau's statement, presenting evidence that Trudeau is living much more like a prince than the pauper he professes to be. For example, the FTC has presented evidence that until recently Trudeau lived in an expensive suburban home with two personal chefs and a butler. Between August and November 2012 he purchased over $100,000 in home furnishings, over $16,000 in clothes and close to $1,000 worth of cigars. All of these purchases were made with a credit card issued to Trudeau. The credit card bills have been paid, but it is unclear by whom.

To bolster their argument, the FTC has served subpoenas seeking testimony and/or documents from third parties it suspects to be related to Trudeau and/or might have information relating to Trudeau's ability to pay the sanction. Not surprisingly, these efforts have been met with stiff resistance, forcing the FTC to litigate the enforcement of its subpoenas in the issuing courts. Despite defeating all efforts to quash its subpoenas, little information has been forthcoming. See e.g., Global Information Network, U.S. v. FTC, 2012 WL 6100472 (N.D. Ohio Dec. 7, 2012); FTC v. Trudeau, 2012 WL 5463829 (N.D. Ohio Nov. 8, 2012); Babanko v. FTC, No. 1:12-MC-00006 (S.D. Ohio March 22, 2012).

As part of its efforts to challenge Trudeau's claim of inability to pay, the FTC has also issued a number of subpoenas from this court. First, it has subpoenaed Trudeau's current attorneys, Winston & Strawn ("Winston"), seeking information regarding Trudeau's payments for legal services. Second, the FTC has subpoenaed the Law Offices of Mark Lane ("Lane"), a self-professed specialist in protecting his "client's assets from creditors and lawsuits while, at the

**FTC Attachment B**

Case: 1:03-cv-03904 Document #: 781 Filed: 08/06/13 Page 6 of 36 PageID #:8528
Case 1:16-cv-03904-D Document #5/1361 Filed: 03/05/23 Page 3 of 36 PageID #:508 Exhibit
FTC Attachments A-D    Page 6 of 20

same time allowing them to retain control over the assets and the income they produce."[1] The Lane subpoena, like the Winston subpoena, seeks only documents relating to payments made to Lane or Winston by or on behalf of Trudeau. Finally, the FTC has issued a subpoena to Website Solutions U.S.A. Inc.("WSU").

Because all of the subpoenaed parties have raised objections and none have produced any information or otherwise complied with the subpoenas, the FTC has, pursuant to Fed. R. Civ. P. 45(c)(2)(B)(I), moved to compel their compliance. Winston and Lane have raised objections and arguments that are about as valid as the misrepresentations on Trudeau's contemptuous infomercials. Therefore, for the reasons set forth below, the motion is granted as to all three subpoenaed parties.

## BACKGROUND

The Winston and Lane subpoenas seek three categories of documents:

(1) All retainer agreements referring or relating to compensation for work or service performed for or provided to any Trudeau-Affiliated Person or any Trudeau-Affiliated Entity [Trudeau-Affiliated Person and Trudeau-Affiliated Entities are broadly defined in the subpoena];

(2) All documents created on or after June 2, 2010, evidencing payment received or promised, or the source of payment received or promised, for work or services performed or to be performed for any Trudeau-Affiliated Person or any Trudeau-Affiliated Entity; and

(3) Documents sufficient to establish the balance of funds at all times in any account controlled directly or indirectly for the benefit of or on behalf of any Trudeau-Affiliated Entity or Trudeau-Affiliated Person.

The subpoenas have a specific limitation indicating that the FTC is not seeking confidential information relating to Trudeau's motive for seeking legal representation, litigation

---

[1] These are Lane's own description of his services as an "asset protector."

3

**FTC Attachment B**

Case: 1:03-cv-03904 Document #: 781 Filed: 03/06/13 Page 4 of 36 PageID #:8500
Case 3:16-cv-03201-D Document #5-1 Filed 08/05/23 Page 13 of 26 PageID 399
FTC Attachments A-D    Page 7 of 20

strategy or the specific nature of any legal services provided, or the substance of any attorney/client communication other than the limited financial portions of any retainer agreement that do not reveal such information. The subpoenas specifically invited Winston and Lane to redact from the documents produced "all portions thereof that reveal the motive in seeking legal representation, litigation strategy or the specific natures of services provided or to be provided."

Winston responded to the subpoena by letter from Trudeau's primary counsel, Kimball Anderson, to FTC attorneys Mora and Cohen. Anderson's letter indicated that Winston had no documents responsive to categories (1) or (3). With respect to category (2), the letter indicated that Winston represents Kevin Trudeau and no other Trudeau affiliated entity as defined in the subpoena. With respect to Trudeau personally, Winston objected to producing any category (2) documents based on: (1) Rule 1.6(a) of the Illinois Rules of Professional Conduct; (2) the request was overly broad, unduly burdensome, ambiguous, vague, and not calculated to lead to the discovery of admissible evidence; (3) the request was cumulative to information the FTC had obtained by subpoenaing Trudeau's banks; and (4) it was inappropriate to subpoena opposing counsel.

Lane initially responded by objecting to the subpoena because it was: (1) unduly burdensome, vague, ambiguous, not reasonably calculated to lead to admissible evidence and cumulative to previous subpoenas issued by the FTC; and (2) it sought production of confidential client information. Lane did indicate that it "holds no cash or other assets owed to, or belonging to the judgment debtor."[2]

---

[2] Lane initially responded by letter from Marc Lane. During the course of briefing the instant motion, Lane has been represented by Winston.

Case 1:16-cv-08040 Document #: 17-1 Filed: 08/06/13 Page 1 of 36 PageID #:510
Case 1:16-cv-08043 Document #: 57-3 Filed: 03/05/18 Page 8 of 36 PageID #:851
FTC Attachments A-D    Page 8 of 20

**DISCUSSION**

As an initial matter, all subpoenaed parties have argued that the subpoenas are invalid because the FTC has not complied with Fed. R. Civ. P. 69(a). As the FTC points out, because none of the subpoenaed parties raised this argument in their responses or objections, the argument is technically waived. See Ott v. City of Milwaukee, 682 F.3d 552, 558 (7th Cir. 2012) (Rule 45 requires the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game.). Objections must be raised before the earlier of the time specified for compliance or 14 days after the subpoena is served. Id.; Fed. R. Civ. P. 45(c)(2)(B).

Even if not waived, the argument has no merit. Rule 69(a)(1) provides that "a money judgment is enforced by a writ of execution, unless the court directs otherwise. (Emphasis added). In the original September 2004 Sanction Order, the terms of which were incorporated into the court's June 2, 2010 Order, the court specifically directed (and authorized) the FTC to monitor compliance using "procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36 and 45." Thus, the court has "ordered otherwise."

Moreover, even if the court had not authorized the FTC to follow federal discovery rules, Rule 69(a)(2) provides that "in aid of the judgment . . . the judgment creditor may obtain discovery from any person . . . as provided in these rules or by the procedure of the state where the court is located." (Emphasis added). As noted by then District Judge Rovner in Evans v. Chicago Football Franchise Limited Partnership, 127 FRD 492, 493 (N.D. Ill. 1989), "this language clearly contemplates that plaintiff has a choice between using the federal discovery rules and using the practice of the state."

5

**FTC Attachment B**

Case 1:16-cv-03901 Document #: 5-1 Filed: 03/06/13 Page 1 of 36 PageID #:51
Case 1:16-cv-03043 Document #: 5-1 Filed: 03/06/13 Page 9 of 36 PageID #:51
FTC Attachments A-D    Page 9 of 20

Any argument that the FTC must first commence execution proceedings under Illinois law by serving Trudeau with a citation to discover assets before conducting discovery in aid of the judgment is unavailing and unsupported by Dexia Credit Local v. Rogan, 629 F.3d 612 (7th Cir. 2011), the case on which the subpoenaed parties rely. Dexia did state that under Illinois law a citation to discover assets initiates supplemental proceedings, but it was not faced with the instant question, nor did it hold that a citation to discover assets must be served before a judgment creditor could seek discovery in aid of a judgment (as opposed to execution), and it certainly never held that a judgment creditor specifically ordered by the court to use the federal discovery rules to monitor a contemnor's compliance with a sanction order must do so. Blaw Knox Corp. v. AMR Indus., Inc., 130 FRD 400 (E.D. Wis. 1990), the other case on which the subpoenaed parties rely, dooms their argument. In reviewing Rule 69(a), the Blaw Knox court determined that the Rule contained a distinction between execution and discovery, and held that "a judgment creditor is limited to the collection options provided by the state," but may obtain discovery under either federal or state law. Id. at 402. Thus, the court rejected the argument that discovery under the federal rules had to be preceded by an attempt at execution under state law. Id. Under Blaw Knox, a judgment creditor may seek discovery under the federal rules at any time post-judgment. Any assets of the judgment debtor found during such discovery are not, however, subject to a lien that would be created if execution proceedings had begun under state law. See e.g., Peterson v. Farrakhan, 2008 WL 656267 at *3 (N.D. Ind. March 5, 2008).

Winston and Lane next argue that compliance with the FTC's subpoenas would compel them to violate their ethical obligations under Illinois Rule of Professional Responsibility 1.6(a), which provides in part that a lawyer "shall not reveal information relating to the representation

**FTC Attachment B**

Case 1:16-cv-03207 Document #: 175-1 Filed: 08/06/13 Page 10 of 36 PageID #:512
Case 3:16734-cv-03904-D Document #45/178 Filed: 03/06/05/13/13 7 of 36 PageID #:512
FTC Attachments A-D    Page 10 of 20

of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b) or required by paragraph (c)." Even if Winston and Lane are correct that the source of payments made to them by or on behalf of Trudeau or any Trudeau-affiliated person or entity constitutes "information relating to the representation of a client,"[3] paragraph 1.6(b)(6) specifically permits disclosure of such information "to comply with other law or a court order." Fed. R. Civ. P. 45 constitutes a "law" that requires Winston and Lane to reveal otherwise confidential, non-privileged client information, and a subpoena issued under Rule 45 is a court order that compels compliance absent some other valid objection. See SEC v. Sassano, 274 FRD 495, 497 (S.D. N.Y. 2011). "Rule 1.6 is not intended to, and does not apply to judicial proceedings in which a lawyer may be required to produce evidence concerning a client." Avoletta v. Danforth, 2012 WL 3113151 at *1 (D. Conn. 2012) (applying Connecticut rule virtually identical to Illinois rule). Thus, Winston and Lane have fulfilled their ethical obligation under Rule 1.6(a) by bringing the matter to this court's attention and must, if ordered, reveal the information.

Finally, Winston and Lane have raised a number of the usual boilerplate objections, none of which carry any merit. The subpoenas are not overbroad, but actually are limited in nature. Compliance would not be unduly burdensome, particularly since the information sought is most likely available within the firms' computer systems. The subpoenas specifically disclaim any attempt to discover confidential information, and even if such information was called for, neither Winston nor Lane has identified such privileged information in a log as required by Fed. R. Civ.

---

[3] For an thorough discussion of the breath of Rule 1.6 see Edward W. Feldman, Be Careful What You Reveal: Model Rule of Professional Conduct 1.6, ABA Litigation Magazine, Vol. 38 No. 4 Summer/Fall 2012.

7

**FTC Attachment B**

Case 1:16-cv-03904 Document #: 5-1 Filed: 03/06/13 Page 11 of 20 PageID #:851
Case 3:16-cv-00904-D Document #: 5-1 Filed 03/06/13 Page 11 of 20 PageID #:851 Exhibit
FTC Attachments A-D    Page 11 of 20

P. 45(d)(2)(A). As for Winston's argument that taking discovery of opposing counsel is rarely appropriate, the court finds that it is appropriate in the instant case, given Trudeau's efforts to avoid paying the sanction and his apparent ability to retain prestigious counsel and live a life of luxury.

Accordingly, for the reasons set forth above, the motion to compel Winston and Lane to comply is granted. Winston and Lane are ordered to produce forthwith all records showing payments and source of payments received for its legal services on behalf of Kevin Trudeau or any Trudeau-affiliated entity or Trudeau-affiliated person as defined in the subpoenas. WSU is ordered to comply forthwith with the subpoena and provide all responsive financial information and bank statements.

## CONCLUSION

For the reasons set forth above, the motion to compel Winston & Strawn, the Law Offices of Marc Lane, and Website Solutions USA to comply with subpoenas is granted.

**ENTER:** March 6, 2013

_____
**Robert W. Gettleman**
**United States District Judge**

**FTC Attachment B**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | No. 03 C 3904 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| KEVIN TRUDEAU, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

On June 2, 2010, this court ordered Kevin Trudeau to pay a remedial sanction of $37,616,161 to the Federal Trade Commission ("FTC") for reimbursement to defrauded consumers, as a result of Trudeau's contemptuous violation of this court's September 2004 Consent Order that settled a prior finding of contempt. See FTC v. Trudeau, 708 F. Supp.2d 711 (N.D. Ill. 2010). That order has been affirmed by the court of appeals. FTC v. Trudeau, 662 F.3d 947 (7th Cir. 2011). As a result of Trudeau's failure to comply with the court's June 2, 2010 Order, the FTC moved to hold him in contempt yet again (Doc. 481).

Because Trudeau had paid nothing toward the sanction, on December 6, 2012, this court held (Doc. 535) that the FTC has carried its initial burden to establish by clear and convincing evidence that Trudeau has violated the court's 2004 order, shifting the burden to Trudeau to produce evidence of poverty or insolvency that prevents compliance. SEC v. Custable, 1999 WL 92260 at *2 (N.D. Ill. 1999). To satisfy that burden, Trudeau filed a "Sworn Financial Statement" with supporting documents that suggest that he lacks the ability to pay anything toward the $37 million sanction. The FTC challenged the bona fides of Trudeau's Statement, presenting evidence that Trudeau is "living much more like a prince than the pauper he professes to be." FTC v. Trudeau, 2013 WL 842599 (N.D. Ill. March 6, 2013).

**FTC Attachment C**

The FTC has served numerous subpoenas seeking testimony and/or documents from third parties it suspects are related to Trudeau and/or might have information relating to Trudeau's ability to pay. As noted in the court's previous order, these efforts have been met with stiff resistance, forcing the FTC to litigate the enforcement of its subpoenas in the issuing courts and in this court. Id. The FTC has issued subpoenas to Trudeau, his wife Nataliya Babanko, the Law Offices of Marc Lane, Winston & Strawn, GIN USA, Inc., KT Radio Network, Inc., Website Solutions USA, Inc., Sunil Sant and others.

After a number of skirmishes, in open court on April 14, 2013, the corporate entities that the FTC contends are controlled by Trudeau (GIN USA, Inc., KT Radio Network, Inc., Website Solutions USA) indicated that they have designated Trudeau as their Rule 30(b)(6) deponent and agreed to submit him for a deposition in New York on April 25 and 26, 2013. Counsel for the FTC agreed to travel to New York to take this deposition. Lane has agreed to be deposed in Chicago on April 30, 2013. On March 7, 2013, the court set the FTC's contempt motion for an evidentiary hearing on May 21, 2013.

On April 15, the FTC moved to compel Lane to produce certain documents regarding his "asset protection" program designed for Trudeau, to which Lane has asserted an attorney-client privilege. At the presentment of that motion on April 18, the court ordered Lane to file a brief by noon, April 24, and for Lane and the FTC to designate and submit to the court by noon on April 24, 2013, twenty-five documents each for in camera inspection. The court set April 25, 2013, at 2:00 for hearing/ruling on the FTC's motion.[1]

---

[1] The court originally set hearing for April 24, 2013 but at Trudeau's lawyer's request moved it to the 25th.

2

FTC Attachment C

On April 22, 2013, shortly before Babanko's scheduled deposition, Trudeau filed a Chapter 7 petition for bankruptcy. The following day he filed a suggestion of bankruptcy in the instant action, claiming that the instant civil contempt proceeding was stayed by the automatic stay provisions of the Bankruptcy Act because he no longer controls his assets and cannot "pay" the sanction. Also on April 23, Lane (represented by the same lawyers as Trudeau) filed a motion to strike the deadline set in this court's April 18 order (Doc. 637) that required him to provide documents for in camera inspection. He set that motion to be heard on April 30, after the deadline and his scheduled deposition had passed. The day after Trudeau filed his bankruptcy petition, Trudeau's counsel informed the FTC that Babanko would not appear for her deposition scheduled for later that day. Trudeau's lawyers also indicated that all depositions scheduled for the following week would be cancelled. Indeed, as has been the pattern throughout the instant proceedings, all persons and entities connected in any way with Trudeau now seek to further delay all proceedings.

On April 24, 2013, the FTC filed its opposition to Trudeau's suggestion of bankruptcy and application of the automatic stay, as well as a counter motion for this court to determine that the automatic stay is inapplicable. The FTC also set that motion to be presented on April 30, 2013, after the dates for the scheduled depositions had passed. The following day, April 25, 2013, this court held the hearing that was originally set for ruling on the FTC's motion to compel the Lane documents. At that time the court informed the parties that because of the upcoming May 21 hearing, it intended to rule the following day on the FTC's motion for a determination of the application of the automatic stay. It granted Trudeau leave to file a brief in opposition to that motion. Trudeau has filed his brief, and the motion is ripe for ruling.

## DISCUSSION

3

**FTC Attachment C**

When a bankruptcy petition is filed, it operates as a stay on the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case [under Title 11] or to recover a claim against the debtor that arose before the commencement of the case under [Title 11]." 11 U.S.C. § 362(a)(1) (the "Automatic Stay Provision"). The Automatic Stay Provision is intended to "'preserve what remains of the debtor's insolvent estate and . . . provide for a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" Solis v. Caro, 2012 WL 1230824 at *3 (N.D. Ill. April 12, 2012) (quoting Chao v. BDK Industries, LLC, 296 B.R. 165, 167 (C.D. Ill. 2003)). Whether the Automatic Stay Provision is applicable to a particular case is a question of law. Id.

There are exceptions to the stay's application, set out in § 362(b). Of particular import to the instant case is § 362(b)(4), which exempts from the application of the stay any "commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power." The purpose of this exception "is to prevent a debtor from `frustrating necessary governmental functions by seeking refuge in bankruptcy court.'" Solis v. Wallis, 2012 WL 3779065 at *6 (N.D. Ill. Aug. 30, 2012) (quoting City of New York v. Exxon Corp., 932 F.2d 1020, 1024 (2d Cir. 1999)).

Two tests are commonly used to determine whether a governmental action falls within the § 362(b)(4) exception to application of the Automatic Stay Provision: (1) the "pecuniary

4

purpose" test; and (2) the "public policy" test.  Id; In re Emerald Casino, Inc., 2003 WL 23147946 at *8 (N.D. Ill. Dec. 24, 2003).  Under the pecuniary purpose test, "`courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety [or public policy].'"  Id. (quoting BDK Indus., 296 B.R. at 167).  Matters that relate primarily to public safety are excepted from the Automatic Stay.  Id.

Under the public policy test, courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy.  Id.  Matters that effectuate public policy are excepted from the stay.  Id.

The instant proceeding is excepted from the Automatic Stay Provision under both tests.  First, as to the pecuniary purpose test, the court must "look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage over third parties in relation to the debtor's estate."  Id. at *7 (quoting Caro, 2012 WL 1230824, at *5).  Generally, when the focus of the police or regulatory power is directed toward the debtor's financial obligations rather than the State's health and safety concerns, the exception does not apply.  Thus, "`where the agency's sole concern in a given proceeding is to protect the government's pecuniary interests, the action remains subject to the automatic stay.'"  Id. (quoting Metzler v. Bennett, 1998 WL 187454 at *4 (N.D.N.Y. 1998).

In the instant case, the FTC has moved to hold Trudeau in contempt for failure to comply with the court's previous order that was entered in an FTC enforcement action brought for the benefit of the consumers the FTC is charged to protect.  Indeed, a primary purpose of the FTC

5

**FTC Attachment C**

Act[2] is "to protect consumers from economic injuries."  FTC v. Febre, 128 F.3d 530, 536 (7th Cir. 1997).  The relief sought by the FTC is not the payment of the $37.6 million remedial sanction, but a full accounting of Trudeau's assets.[3]

As noted, the posture of the instant proceeding is that the court has already determined that the FTC has made a prima facie showing that Trudeau is in contempt of this court's previous order, shifting the burden to Trudeau to demonstrate an inability to pay.  The discovery sought by the FTC is simply to challenge Trudeau's submissions.  At this point,[4] no order to pay is or could be sought.  At most, Trudeau must provide a full accounting of his assets to purge his contempt of the sanction order.  That does not constitute enforcement of a money judgment.  SEC v. Bilzerian, 131 F. Supp.2d 10, 14-15 (D. D.C. 2001).

Moreover, the FTC's motion to hold Trudeau in contempt in no way seeks to protect its own pecuniary interests.  In the event that Trudeau is ultimately forced to pay the sanction, the FTC receives that money solely to effect a remedial plan to repay the consumers Trudeau willfully defrauded.  Any money not repaid to consumers reverts back to Trudeau.  Thus, the FTC has no pecuniary interest at stake.  See Dole v. Hansborough, 113 B.R. 96, 98 (D. D.C. 1990).  Consequently, the court concludes that under the pecuniary purpose test, § 362(b)(4) is applicable and the proceeding is excepted from the Automatic Stay Provision.

---

[2] 15 U.S.C. § 45 et seq.

[3] As the FTC recognizes, any attempt to enforce or collect the judgment is subject to the Automatic Stay Provisions.  See e.g., NLRB v. 15th Avenue Iron Works, Inc., 964 F.2d 1336, 1337 (2d Cir. 1992) (NLRB enforcement action not subject to a stay, but any attempt to collect on the judgment is not authorized by the enforcement proceeding, and requires a separate application to the bankruptcy court.).

[4] The FTC contends that Trudeau's bankruptcy petition is a "sham," and will seek to have the petition dismissed.  This is a matter for the bankruptcy court to determine.

6

FTC Attachment C

The same result is reached under the public policy test, which requires the court to determine whether the proceeding primarily adjudicates private rights or effectuates public policy. Solis, 2012 WL 3779065 at *8. If an action substantially adjudicates private rights and only incidentally serves the public interest it is regarded as falling outside the governmental unit exception. Id.

As noted, a primary purpose of the FTC Act is to protect consumers. Febre, 128 F.3d at 536. "The primary purpose of [the FTC Act] is to lessen the harsh effects of caveat emptor." FTC v. Freecom Communications, Inc., 401 F.3d 1192, 1202 (10th Cir. 2005). Obviously, the primary purpose of the instant action is to protect consumers. True, the individual consumers who have been defrauded by Trudeau may ultimately benefit by the FTC's pursuit of this action, but such incidental benefits are secondary to the FTC's interest in pursuing its primary goal of consumer protection. Solis, 2012 WL 3779065 at *9. Consequently, the court concludes that under the public policy test § 362(b)(4) excepts the instant proceeding from application of the Automatic Stay Provisions.

Trudeau's reliance on and chastisement of the FTC for failing to cite In re Banalcazar, 283 B.R. 514 (ILNB 2002), is mistaken. In Banalcazar, the bankruptcy court held that the governmental unit exception did not apply to a state court civil contempt proceeding because that proceeding was initiated and pursued for private gain by a private entity, not a governmental unit. Id. at 530. Thus, Banalcazar is inapplicable to the instant case. Nor does Supporters to Oppose Pollution, Inc. v. Heritage Group, 973 F.2d 1320, 1327 (7th Cir. 1992), provide any support to Trudeau. In Supporters to Oppose Pollution, the court simply stated that a private creditor (a citizens group seeking attorney's fees) could not rely on Fed. R. Civ. P. 69 or 71 to

7

**FTC Attachment C**

Case: 1:16-cv-03904 Document #: 5-1 Filed: 04/05/13 Page 18 of 36 PageID #:94
Case 1:03-cv-03904 Document #: 491 Entered: 04/26/13 Page 19 of 20
FTC Attachments A-D    Page 19 of 20

marshal a judgment debtor's assets for execution after a bankruptcy petition was filed. The case says nothing about whether the Automatic Stay Provision is applicable in the first instance. Id.

Accordingly, the court concludes that the § 362(b)(4) exception applies, and the instant proceeding is not subject to the Automatic Stay Provisions.

## CONCLUSION

For the reasons stated above, the FTC's motion for a determination that the contempt proceedings in this court are not subject to the Automatic Stay Provision is granted. Lane's brief and the sample documents for in camera inspection shall be filed with the court on or before April 29, 2013. The parties are ordered to proceed with the depositions previously set forthwith. To the extent the dates for depositions have passed due to the instant proceedings or are not possible to meet, counsel are directed to meet and confer to set new dates as soon as possible. This matter is set for report on status of the depositions and for ruling on the FTC's motion to compel Lane to produce documents on May 2, 2013, at 11:00 a.m.

**ENTER:**   April 26, 2013

_____
**Robert W. Gettleman**
**United States District Judge**

8

**FTC Attachment C**

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**ORDER**

April 29, 2013

Before

KENNETH F. RIPPLE, *Circuit Judge*
DANIEL A. MANION, *Circuit Judge*
JOHN DANIEL TINDER, *Circuit Judge*

| No.: 13-1898 | FEDERAL TRADE COMMISSION, Plaintiff - Appellee<br><br>v.<br><br>KEVIN TRUDEAU, Defendant - Appellant |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:03-cv-03904<br>Northern District of Illinois, Eastern Division<br>District Judge Robert W. Gettleman ||

The following are before the court:

1. **EMERGENCY MOTION FOR ONE WEEK STAY**, filed April 26, 2013, by counsel for the appellant.

2. **FEDERAL TRADE COMMISSION'S OPPOSITION TO TRUDEAU'S EMERGENCY MOTION FOR ONE-WEEK STAY PENDING APPEAL**, filed on April 29, 2013, by counsel for the appellee.

**IT IS ORDERED** that the Emergency Motion for One Week Stay is **DENIED**. Appellant Trudeau has failed to show any reasonable likelihood of prevailing on the merits of his appeal to overturn the district judge's decision that the stay exception of 11 U.S.C. §362(b)(4) applies.

form name: **c7_Order_3J**(form ID: **177**)

**FTC Attachment D**